UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO. 6:02-CV-1204-ORL-19JGG



FILED

03 DEC 10 PM 12: 01

CLE...
MIDDL...
ORL...

ACCESS FOR AMERICA, INC., a
Florida not for profit corporation, and
DOUG WILDER, individually,

       Plaintiffs,

vs.

STEVEN J. WOLK, individually;
STEPHEN WOLK as Trustee under the
Stephen Wolk Living Trust Dated the 18th
day of July, 1996; and HELEN J. WOLK,
as Trustee under the Helen J. Wolk Living
Trust dated the 18th day of July, 1996,

       Defendants and Third-Party
       Plaintiffs,

vs.

CONOCOPHILLIPS COMPANY,
a foreign corporation, SEAN MARKET-
ING, INC., a Georgia corporation,
KARIM M. ALI, SADAF ALI, THAO T.
CAO, HUNG PHUNG CAO, R.R.M.O.,
INC., a Florida corporation, RICKY
PEREZ, LISA ANN DE SALVO, FTF,
INC., a Florida corporation, HOKUSHIN,
INC., a Florida corporation, TAKASHI
HAYAKAWA, and JUNKO HAYAKAWA,

       Third-Party Defendants.

_____/

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
## SUPPORTING MEMORANDUM OF LAW

    COME NOW the Plaintiffs, ACCESS FOR AMERICA, INC., a Florida not-for-profit

corporation, and DOUG WILDER, Individually, by and through their undersigned counsel, pursuant

to the provisions of Rule 56(c) of the Federal Rules of Civil Procedure and the provisions of Rule 3.01 of the Local Rules of the Middle District of Florida, and hereby file this Motion for Summary Judgment and Concise Statement of Undisputed Facts on the issue of the liability of the Defendant, STEVEN J. WOLK, individually; and HELEN J. WOLK, as Trustee under the Helen J. Wolk Living Trust dated the 18th day of July, 1996, as there exists no genuine issue of material fact, and the Plaintiffs are entitled to summary judgment as a matter of law.

## PLAINTIFFS' CONCISE STATEMENT OF UNDISPUTED FACTS

1. The Plaintiffs filed the instant Complaint [D.E. 1] against Defendants, STEVEN J. WOLK, individually; STEVEN WOLK as Trustee under the Stephen Wolk Living Trust Dated the 18th day of July, 1996; and HELEN J. WOLK, as Trustee under the Helen J. Wolk Living Trust dated the 18th day of July, 1996, on the basis that the Defendants' property, a strip mall, is a public accommodation, and maintains barriers to access by the disabled and therefore discriminates against such persons in violation of Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181, et seq. ("the ADA") (citations omitted).

2. The Defendants, in answer to Interrogatory #3 of the Second Set of Interrogatories, admitted that the owners of the shopping center that is the subject of this litigation are STEVEN J. WOLK, and HELEN J. WOLK, Living Trust dated the 18th day of July, 1996. See Defendants' Answer to Interrogatory #3 of Second Set of Interrogatories, Exhibit "A". Based on Defendants' Answer to Interrogatory #3 of the Second Set of Interrogatories, that the owners of the property are STEVEN J. WOLK, individually, and HELEN J. WOLK, as Trustee, Plaintiffs have filed a Voluntary Dismissal as to Defendant, STEVEN WOLK, as Trustee, under the STEVEN WOLK Living Trust Dated the 18th day of July, 1996, and are proceeding against STEVEN J. WOLK,

individually, and HELEN J. WOLK as Trustee, under the HELEN J. WOLK Living Trust dated the 18th day of July, 1996.

3.     A formal inspection of the property, subject to this lawsuit was conducted by Plaintiff's expert, Gene Mattera.

4.     Said inspection revealed several violations of the ADA at the subject property, which are explained in the expert witness report of Gene Mattera. *(See copy attached hereto as Exhibit B2)*

5.     Both in the complaint and supporting affidavit of Plaintiff, DOUG WILDER, (Exhibit "C"), Plaintiff, DOUG WILDER has alleged that he is a Florida resident, qualified as an individual with disabilities, as defined by the ADA, and was subject to discrimination at Defendants' premises.

6.     Both in the Complaint and supporting affidavit of the President of the associational Plaintiff (Exhibit "D"), it is alleged that members of the association, include persons with disabilities as defined by the ADA. The interests at stake in the litigation, are germane to the organization's purpose of assuring that places of public accommodation are accessible to and usable by the disabled, and that it is likely that the Defendants' removal of the barriers to access that are non-compliant with the ADA, will redress the Plaintiffs' injury.

7.     The evidence that Plaintiffs have presented regarding existing ADA violations at Defendants' property is uncontested and cannot be challenged because the Defendant has not disclosed an expert in this case, leaving no issue of material fact.

8.     Therefore, in the interests of concluding this litigation and obtaining the relief sought in the Complaint by the Plaintiffs in this litigation, the undersigned counsel submits this motion for summary judgment on the basis that there is no genuine issue of material fact since Plaintiffs have

standing to bring this action, ADA violations exist on the Defendant's property and the costs to remove the barriers to access as explained in the Affidavit of Plaintiffs' expert (Exhibit "B"), makes the removal of said barriers to access, readily achievable.

## MEMORANDUM OF LAW

## THE AMERICANS WITH DISABILITIES ACT

Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." *See* 42 U.S.C. §12101(a)(2); *See also* 42 U.S.C. § 12101(a)(3) ("[Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services") 42 U.S.C. § 12101(a)(3).

Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." *See* 42. U.S.C. § 12101(a)(5). After thoroughly investigating the problem, Congress concluded that there was a "compelling need...[for a] clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." *See* S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.Code Cong. & Admin. News 1990, pt. 2, pp. 303, 332.

To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public

4

services (Title II), and public accommodations (Title III).

The provisions of Title III are at issue in this case. Title III of the ADA prescribes, as a "[g]eneral rule" that:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

*See* 42 U.S.C. § 12182(a).

The phrase "public accommodation" is defined in terms of twelve (12) extensive categories[1] which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the non-disabled. *See* Sen. Rep. No. 101-116, at 59; H.R. No. 101-485, pt. 2, at 100, U.S. Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-383.

---

[1]. "(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
"(B) a restaurant, bar, or other establishment serving food or drink;
"(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
"(D) an auditorium, convention center, lecture hall, or other place of public gathering;
"(E) a bakery, grocery store, clothing store, hardware store, *shopping center, or other sales or rental establishment;* (emphasis added)
"(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
"(G) a terminal, depot, or other station used for specified public transportation;
"(H) a museum, library, gallery, or other place of display or collection; "(I) a park, zoo, amusement park, or other place of recreation;
"(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
"(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
"(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." § 12181(7) .

Title III incorporates the remedies and procedures of Title II of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12188(a)(1). The court may order injunctive relief which includes an order to make a facility "readily accessible." 42 U.S.C. § 12188(a)(2). Or, where appropriate, injunctive relief may include "requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods..." 42 U.S.C. § 12188(a)(2).

"There is a private right of action for enforcement of [the ADA] regulations to require [private] entities to implement nondiscriminatory standards and proceed to make necessary modifications." *See Schonfeld v. City of Carlsbad,* 978 F.Supp. 1329, 1997 WL 595310, *4 (S.D. Cal. 1997) (private right of action exists for enforcement of Title II regulations to require public entities to make modifications); *See* 42 U.S.C. § 12188 (private right of action exists for enforcement of Title III against private entities).

## THE INSTANT CLAIM

The Defendants, STEVEN J. WOLK, individually, and HELEN J. WOLK, as Trustee under the Helen J. Wolk Living Trust dated the 18th day of July, 1996, are the owners or operators of a public accommodation that contains numerous barriers of access to the Plaintiffs, disabled individuals, and which deny them the equal use and enjoyment of the property in violation of the ADA. *See* Affidavit of Gene Mattera In Support of Motion for Summary Judgment *(copy attached hereto as Exhibit "B")* with Expert Witness Report with accompanying photographs incorporated as Exhibit "B2". Therefore, the undersigned counsel argues that there is no genuine issue of material fact as to the Defendants' liability, and that the Plaintiffs are entitled to summary judgment as a matter of law.

## A.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT IN THIS CASE

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is appropriate when the pleadings, depositions, affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment must first demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A 'genuine issue' exists when there is sufficient evidence to permit a reasonable jury to find for the nonmoving party. *See, Bourque v. FDIC,* 42 F.3d 704 (1st Cir. 1994). A 'material fact' is one that has the potential to affect the outcome of the suit under applicable law. *Id.*

On the other hand, the party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985); *See also O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir. 1995), *rev'd on other grounds,* 517 U.S. 308 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." *See Celotex* at 324. *See also, Anderson.*

In the case at bar, the Defendants have admitted to owning and/or operating the subject property. The Defendants' property, a Strip Mall, is defined by the ADA as a 'public accommodation' and as such, falls within the purview of the ADA. Therefore, the Defendants'

7

property must be in compliance with the ADA. Violations found on the Defendants' property demonstrate that the property is not in compliance with the ADA. Therefore, there is no genuine issue as to either the ownership and or operation of the property or the applicability of the ADA.

The evidence that Plaintiffs have presented regarding existing ADA violations at Defendants' property is uncontested and cannot be challenged because the Defendants have not disclosed an expert in this case, leaving no issue of material fact for consideration by the Court. The Court imposed deadline for Defendant to file an expert witness report was October 31, 2003. See, Case Management and Scheduling Order of January 29, 2003.

The Court should grant this motion for summary judgment because there is no genuine issue as to a material fact in dispute, and the Plaintiffs are entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex*, supra; and *Anderson*, supra.

## B.   THE STRIP MALL IS A PLACE OF PUBLIC ACCOMMODATION

Title III of the ADA provides in pertinent part that "no individual shall be discriminated against on the basis of disability[2] in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation..." *See* 42 U.S.C. §12182(a). A 'public accommodation' is a facility operated by a private entity, whose operations affect commerce and fall within one of several categories. *See* 28 C.F.R. § 36.104 (defining 'public accommodation' and listing the various categories. *See also* 42 U.S.C. § 12181(7) (defining 'public accommodation' as a "...shopping center, or other sales or retail establishment") 42 U.S.C. § 12181(7).

---

[2]   The ADA defines 'disability' to mean, with respect to an individual: a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. §12102(2).

As discussed earlier, the subject property is a strip mall. The Defendant provides goods and services to the public which has a direct affect on commerce, and is within the contemplation of the ADA and the Code of Federal Regulations as a public accommodation, *See* 28 C.F.R. § 36.104, and is therefore a public accommodation. As such, the strip mall must be accessible to handicapped persons as provided for under the ADA. Clearly, architectural barriers to access on the subject property impede the Plaintiffs' and others similarly situated full and equal enjoyment of the Defendants' property. Therefore, these barriers discriminate against the Plaintiffs in violation of the ADA and the Court's granting this summary judgment affords the Plaintiffs' relief in pursuing this objective.

## C. DEFENDANTS, AS OWNERS/OPERATORS OF A PLACE OF PUBLIC ACCOMMODATION, ARE LIABLE FOR NONCOMPLIANCE WITH THE ADA

Liability for noncompliance with the ADA is imposed upon "any person who owns, leases (or leases to), or operates a place of public accommodation" that discriminates[3] against an individual on the basis of disability. *See* 42 U.S.C. § 12182. The Defendants, STEVEN J. WOLK, individually; and HELEN J. WOLK, as Trustee under the Helen J. Wolk Living Trust dated the 18th day of July, 1996, admitted ownership and control. Since the Defendants' property, as a place of public accommodation, contains numerous barriers to access for disabled individuals, the Defendants are liable for the existent violations of the ADA, and this liability is rightfully imposed upon the Defendants. The Defendants, as landlord, attempt to transfer responsibility to the tenants, by bringing them into this lawsuit as Third Party Defendants, is no defense to Plaintiffs' claim

---

[3] Discrimination includes the failure to remove 'architectural barriers' in existing facilities where such removal is 'readily achievable.' 42 U.S.C. §12182(b)(2)(A)(iv). Where an entity can demonstrate that the removal of a barrier is not readily achievable, discrimination also includes the failure to make such facilities available through alternative methods if such methods are readily achievable. 42 U.S.C. §12182(b)(2)(A)(v).

against Defendants. As between Plaintiffs and Defendants, the Defendants are liable. See attached Order on Motion for Partial Summary Judgment in *Access 4 All, Inc. vs. Republic Development of Connecticut,* Case No. 01-14063-CIV-Middlebrooks (Exhibit "E"); *Botosan vs. Fitzhugh,* 13 F. Supp. 2d, 1047 (S.D. Calif. 1998). Whether Defendants are entitled to indemnification against the Third Party tenants, is no defense to the Defendants' operating their facility in violation of the ADA.

### D.   PLAINTIFFS HAVE STANDING TO SEEK THE DEFENDANTS' COMPLIANCE WITH THE ADA

In the Complaint and also in his supporting Affidavit, (Exhibit "A"), the individual Plaintiff, DOUG WILDER, has alleged that he "is a Florida resident and that he qualifies as an individual with disabilities as defined by the ADA". In order to state a claim under the ADA, a Plaintiff must allege that he "(1) has a disability; (2) is a qualified individual; and (3) was unlawfully subject to discrimination because of [his] disability." *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278,1285 (11th Cir. 1997). To meet the minimal constitutional requirement of standing under Article III, § 2, the Plaintiff must show: (1) an injury-in-fact to the Plaintiff; (2) causation of that injury by the Defendant's complained-of-conduct; and (3)  a likelihood that the request for relief addresses that injury. *See generally, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

According to the requirements of *Lujan,* the Plaintiffs' Complaint and supporting Affidavit alleges an injury-in-fact. In paragraphs 6, 7, and 11 of the Complaint [D.E. 1], it is alleged that:

(a)          Plaintiff, ACCESS FOR AMERICA, INC., is a non-profit Florida corporation.  The members of this organization include persons with

10

disabilities as defined by the ADA. This organization's purpose is to represent its members' interests by assuring that places of public accommodation are accessible to and usable by the disabled and its members are not discriminated against because of their disabilities.

(b)     Plaintiff, DOUG WILDER, is a Florida resident, is *sui juris* and qualifies as an individual with disabilities as defined by the ADA.

(c)     Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to discrimination in violation of the ADA by the Defendant.

Pursuant to *Lujan,* the Plaintiff is required to show that he has suffered an "'injury-in-fact' that is concrete and particularized and actual or eminent; the injury is very traceable to the callous action of the Defendant; and it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *See Lujan* at 561; and *See* Affidavit of DOUG WILDER In Support of Motion for Summary Judgment *(copy attached hereto as Exhibit "C")*.

In the case at bar, the Plaintiffs have shown a concrete and imminent injury that is traceable to the Defendants' actions. The Plaintiffs, as Florida residents, have visited the property and desire to avail themselves of the goods and services available at the Defendants' property. In its current form, the Defendant's property is noncompliant with the ADA and is therefore inaccessible to the individual Plaintiff, DOUG WILDER, and to other persons with physical disabilities. Therefore, the Defendants' removal of the barriers to access that are noncompliant with the ADA will redress the Plaintiffs' injury.

To address the issue of associational standing, the Court in *Lujan* held that an association has standing to bring suit on behalf of its members when (1) its members would otherwise have

standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Here, the Plaintiff, ACCESS FOR AMERICA, INC., has met the requirements of *Lujan* as demonstrated in the Complaint and in the supporting Affidavit of Martin Smith, president of Access for America, Inc. (Exhibit "D").

Finally, the injury will be redressed by a favorable decision because the removal of barriers to access will enable the Plaintiffs and others similarly situated to patronize the Defendant's facility in a nondiscriminatory manner. *See generally, Atakpa v. Perimeter OB/GYN Assoc.,* 912 F. Supp. 1566, 1573 (N.D. Ga.. 1994).

## E. PLAINTIFFS HAVE MET THEIR INITIAL MINIMAL BURDEN OF SHOWING THAT THE REMOVAL OF THE ARCHITECTURAL BARRIERS ARE "READILY ACHIEVABLE.

The Affidavit of Plaintiffs' expert states a cost estimate to make the requested modifications. See Exhibit "B"). See *Johnson v. Gambrinus, 116 F.3d 1052 (5th Cir. 1997) (*Holding that ADA Plaintiffs have the initial burden of proving that modifications are reasonable, and the Defendant has the burden of showing that the removal of such barriers are not readily achievable, if the accommodation fundamentally alters the nature of the facility*). See also, Colorado Cross Disability Coalition vs. Hermanson Family L.P., 264 F.3d 1999, 2001 WL 987475, *3 (10th Cir. 2001, citing Johnson, supra; and Assoc. for Disabled Americans, Inc. vs. Concorde Gaming Corp., 99-1058-CIV-HIGHSMITH (August 20, 2001); Bingham vs. Oregon Sch. Activities Assn., 24 F. Supp. 2d, 1110 (D. Or. 1998); and Pascuitti vs. New York Yankees, 1999 WL 129061 (S.D.N.Y. 1999).* Plaintiffs, through the Affidavit of their expert (Exhibit "B"), have established that the Defendants'

property is being maintained in violation of Title III of the ADA, and that the removal of the barriers to accessability are accomplishable and able to be carried out without much difficulty or expense. More specifically, the Plaintiffs' expert testified in his Affidavit on the ADA violations on the premises, and of the cost of approximately $ 5,000.00 to $ 6,000.00, to repair the ADA violations on Defendants' premises.

## CONCLUSION

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court grant this Motion for Summary Judgment on the issue of liability because there is no genuine issue of material fact and the Plaintiffs are entitled to summary judgment as a matter of law. The Summary Judgment should result in Defendants being barred from operating their facility in violation of the Americans With Disabilities Act, and granting an injunction until such time as Defendants produce evidence that they have brought their facility into compliance with the Americans with Disabilities Act.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail to Steven J. Wolk, Esq., 857 Dover Road, Maitland, FL 32751-3121; and Courtney B. Wilson, Esq., at Shook, Hardy, etc., 2400 Miami Center, 201 S. Biscayne Blvd., Miami, FL 33131-4332; and David S. Cohen, Esq., of the Law Offices of David S. Cohen, LC, 5728 Major Boulevard, Suite 550, Orlando, FL 32819; and Jim McCrae, Esq., of Holland & Knight, LLP, 200 S. Orange Avenue, Suite 2600, Orlando, Florida 32802-1526 on this _8th_ day of December, 2003.

Respectfully submitted,

FULLER, FULLER & ASSOCIATES, P.A.
Attorneys for Plaintiffs
12000 Biscayne Blvd., Suite 609
North Miami, FL 33181
(305) 891-5199 - Dade
(954) 463-6570 - Broward
(305) 893-9505 - Facsimile

By: _____
Lawrence A. Fuller, Esquire
Fla. Bar No.: 0180470

3335MotionSummaryJudgmtWOLK 112503mp wpd

14



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO.: 6:02-cv-1204-Orl-19JGG

ACCESS FOR AMERICA, INC., a Florida not-for-profit
corporation, and DOUG WILDER, individually,

        Plaintiffs,

v.

STEPHEN J. WOLK, individually, STEVEN WOLK as Trustee
under the Stephen Wolk Living Trust dated the 18th day of
July, 1996; and HELEN J. WOLK, as Trustee under the Helen J.
Wolk Living Trust dated the 18th day of July 1996,

        Defendant.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF SECOND SET OF INTERROGATORIES

    Plaintiffs, by and through their undersigned attorneys, file this Notice of Service of the Second Set

of Interrogatories propounded to the above-named Defendants, to be answered in writing under oath and

within the time allowed by the applicable rules of the Court.

    I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this 19th day of

May, 2003 to:

Steven J. Wolk, Esq.
857 Dover Road
Maitland, FL 32751-3121

                    FULLER, FULLER AND ASSOCIATES, P.A.
                    Attorney for Plaintiffs
                    12000 Biscayne Blvd., Suite 609
                    North Miami, FL 33181
                    (305) 891-5199 - Dade
                    (954) 463-6570 - Broward
                    (305) 893-9505 - Fax

                    By:_____
                      Lawrence A. Fuller, Esq.
                      Florida Bar No.: 180470

LAF:mp
W:\WPDocs\A.D.A\#3300 through #3399 - OPEN ADA FILES\#3335-WOLK, STEPHEN TRUSTEE\Interrgt2ndSET51903mp.wpd



EXHIBIT
A

# PLAINTIFFS' INTERROGATORIES TO DEFENDANTS
## DATED: May 19, 2003

You are hereby notified to answer under oath the Interrogatories numbered from 1 to 3, inclusive, as shown below, within 30 days after service of the Interrogatories in accordance with Rule 33 of the Federal Rules of Civil Procedure.

Plaintiffs requests that the Defendant answer the following Interrogatories in writing and under oath pursuant to Rule 33 of the Federal Rules of Civil Procedure, and that the answers be served on the Plaintiffs within 30 days after service of these Interrogatories.

In answering these Interrogatories, furnish all information, however obtained, including hearsay, that is available to you and information known by or in possession of yourself, your agents and your attorneys, or appearing in your records.

If you cannot answer the following Interrogatories in full after exercising due diligence to secure the full information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion and detailing what you did in attempting to secure the unknown information. If you cannot furnish exact information, such as dates, periods or amounts, supply estimated information to the extent possible and indicate that the information is estimated.

A question that seeks information contained in or information about or identification of any documents may be answered by providing a copy of such document for inspection and copying or by furnishing a copy of such document without a request for production.

If you object to furnishing any information requested by these Interrogatories on the grounds of privilege, work product or other grounds, your response should state the existence of the information, document or communication, identify the specific grounds on which your objection is based and identify the information objected to by furnishing its date, participants (e.g., names of speakers or authors or addressees) and a general description of the nature, rather than the substance of the purportedly protected information. If the objected-to information contains relevant non-objectionable matter, you should disclose it.

These Interrogatories shall be deemed to be continuing until and during the course of trial. Information sought by these Interrogatories that you obtain after you serve your answers must be disclosed to the Plaintiffs by supplementary answers. You are obligated to supplement your responses to these Interrogatories no later than thirty days after the discovery of the new information and in no event later than fifteen days before the first day of trial.

## DEFINITIONS

The following definitions apply to these Interrogatories:

1.    Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

2.    Document. The term "document" is defined to be synonymous in meaning and equal in scope of the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

3.    Identify.

    a.    With Respect to Persons. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last-known address, and when referring to a natural person, additionally, the present or last-known place of employment and their respective title. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

    b.    With Respect to Documents. When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

    c.    With Respect to Entities. When referring to entities, "to identify" means to give, to the extent known, the name of the entity, the contact person and address of the entity. Once an entity has been identified in accordance with this subparagraph, only the name of that entity need be listed in response to subsequent discovery requesting the identification of that person.

4.    Parties. The terms "Plaintiff" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

5.    Person. The term "person" is defined as any natural person or any business, legal, or governmental entity, or association.

6.    You or Your. The words "you" or "your" mean the [*party*], its present and former members, officers, agents, employees, and all other persons acting or purporting to act on its behalf, including all present or former members, officers, agents, employees, and all other persons exercising or purporting to exercise discretion, making policy and making decisions.

## SECOND SET OF INTERROGATORIES TO DEFENDANTS

1.  State the address of the shopping center that you have an ownership interest in that is located on Municipal Drive in Orlando, Florida.

    ```
    Objection. Defective foundation and ambiguous. According to the
    introductory paragraph, these interrogatories are directed to
    "the above-named defendants (i,e, all of the defendants in the
    case). The interrogatories themselves, however, do not specify
    which of these defendants is meant by the "you" in the inter-
    rogatory, and thus to whom the interrogatory is addressed.
    ```

2.  State the address of the shopping center that you have an ownership interest in that is located on Municipal Drive in Orlando, Florida, that is reflected in the photographs attached to the Complaint as Exhibits 1 through 20.

    ```
    Objection. Defective foundation and ambiguous. Explanation of
    objection the same as in connection with response to Interroga-
    tory No. 1 above.
    ```

3.  State the name and address of each person or legal entity that presently owns an interest in the shopping center on Municipal Drive in Orlando, Florida that is the subject of this litigation.

    ```
    Steven J. Wolk; Helen J. Wolk Living Trust Dated the 18th Day of
       July, 1996
    857 Dover Road
    Maitland, FL  32751-3121
    ```

STEVEN J. WOLK

STATE OF FLORIDA )

                 )       SS.

COUNTY OF ORANGE )

      Before me, the undersigned authority, appeared ___STEVEN J. WOLK___ , who is known to me as the person who executed the foregoing and who did/did not take an oath on this _30th_ day of ___June___ , 2003.



NOTARY PUBLIC
STATE OF FLORIDA AT LARGE
My Commission Expires: _DD015090_

## Certificate of Service

      I HEREBY CERTIFY that a true and correct copy of the foregoing DEFENDANTS' RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES has been furnished to LAWRENCE A. FULLER, ESQ., at Fuller, Fuller, Etc., 12000 Biscayne Boulevard, Suite 609, Miami Beach, FL 33181, by mail this **20TH** day of June, 2003.

STEVEN J. WOLK, ESQ.
Florida Bar No. 0231932
857 Dover Road
Maitland, FL 32751-3121
Tel.: (407) 339-2933
Fax.: (407) 332-1986
Attorney for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando Division

ACCESS FOR AMERICA, INC.,
and DOUG WILDER,

CASE NO.: 6:02-CV-1204-ORL-19JGG

      Plaintiffs,

vs.

STEVEN J. WOLK, Individually; and
STEVEN WOLK as Trustee under the Steven
Wolk Living Trust dated the 18th day of July,
1996; and HELEN J. WOLK, as Trustee
under the Helen J. Wolk Living Trust
dated the 18th day of July, 1996,

      Defendants/Third-Party Plaintiffs,

vs.

CONOCOPHILLIPS COMPANY,

      Third-Party Defendants.

_____/

## AFFIDAVIT OF GENE MATTERA IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA     )
                        )
COUNTY OF CHARLOTTE)

      BEFORE ME, the undersigned, personally appeared, GENE MATTERA, who after being

duly sworn, deposes and states as follows:

    1.      That my name is GENE MATTERA, and I am familiar with the facts and aspects of
this case.

    2.      I am a principal of AccessSolutions.com, Inc., and a resume detailing my
qualifications to assess whether the Defendant's property, a shopping center, and



EXHIBIT
B

located at 6905 Municipal Drive in Orlando, Florida is compliant with the Americans with Disabilities Act of 1990 is attached hereto as Exhibit "B.1."

3.      That I visited the property at the Plaintiffs' request and have prepared a report of the ADA violations that I observed on the premises.

4.      I further estimate the costs of repairing the ADA violations based on my report to range between $ 5,000.00 and $ 6,000.00 .

FURTHER AFFIANT SAYETH NAUGHT.

_Gene C. Mattera_
Gene Mattera

STATE OF FLORIDA          )
                                        S.S.
COUNTY OF CHARLOTTE)

        Before me, the undersigned authority, appeared Gene C Mattera (who is known to me) or who produced _____ as identification, as the person who executed the foregoing and who did/not take an oath on this __3__ day of September, 2003.

_M Muller_
NOTARY PUBLIC
STATE OF FLORIDA AT LARGE

My Commission Expires:

OFFICIAL NOTARY SEAL
JOHN FULLER
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC904103
MY COMMISSION EXP. FEB. 11,2004

W:\WPDocs\A.D.A\#3300 through #3399 - OPEN ADA FILES\#3335-WOLK, STEPHEN TRUSTEE\AFFIDAVIT.Expert.Gene Mattera.wpd

# AccesSolution.com, Inc.

### 231 Cumberland Avenue
### Estell Manor, NJ 08319
### Main Office # (609) 476-4669
### www.AccesSolution.com

## Gene C. Mattera, President

## Statement of Qualifications

### Related Education and Examinations

| | |
|---|---|
| 1979-1980 | University of Central Florida, Orlando, FL - Physics and Math |
| 1980-1981 | Glassboro State College, Glassboro, NJ - Advanced Physics |
| 1989 | New Jersey Real Estate Exam - License Awarded |
| 1990-1992 | Stockton State College, Pomona, NJ - Political Science |
| 1993-2000 | B.T. Builders, Pompano Beach, FL - ADA Courses |
| 1999 | Med-Trade Convention, New Orleans, LA - Adaptive Living |
| 2000 | State of Florida DCF, Tampa, FL - FAC Seminar |
| 2000 | Med-Trade Convention, Orlando, FL - Mobility Devices |

### Related Work Experience

| | |
|---|---|
| 1985-1989 | Independent Vending, Atlantic City, NJ - Owner/Operator |
| 1989-1992 | South Jersey Transportation Authority, Egg Harbor, NJ - Traffic Control |
| 1993-1998 | Access-Ability, Inc., Pompano Beach, FL - Disabled Access Inspector |
| 1998-2001 | Access-Ability, Inc., Pompano Beach, FL - ADA Inspections Manager |
| Present | AccesSolution.com, Inc., Estell Manor, NJ - President and CEO |

Gene C. Mattera conducts many of the initial factual observation inspections for a property. AccesSolution.com, Inc. retains on staff and independent consultants and contractors for cost estimates and/or opinions in areas including but not limited to; General Contracting, Architecture, Plans Review and Building Code Administration. An addendum of consultants' qualifications shall be provided to any requesting party.



**EXHIBIT**

B1

# AcceSolution.com, Inc.
### 231 Cumberland Avenue
### Estell Manor, NJ 08319
### Main Office # (609) 476-4669
### www.AcceSolution.com

April 21, 2003

Fuller, Fuller & Associates, P.A.
Attorneys At Law
Penthouse 802
1111 Lincoln Road Mall
Miami Beach, FL 33139-2493

Re:    International Corner Plaza
        6905 Municipal Drive
        Orlando, FL 32819

Dear Mr. Fuller,

At your request AcceSolution.com Inc. has reviewed the investigative report on ADA violations for the above referenced property and surveyed the property for required modifications to the existing facility. We observed and noted the following:

## PARKING

This facility contains over five (5) stores including a Supermarket, a Bar with food, several retail stores and a restaurant.. These stores over fifty (50) spaces. The number of disabled spaces in accordance with Section 4.1.2 (5)(a) below:

| Total Parking in Lot | Required Minimum Number of Accessible Spaces |
|:---:|:---:|
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |
| 301 to 400 | 8 |
| 401 to 500 | 9 |
| 501 to 1000 | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100 over 1000 |

The current disabled parking spaces are less than twelve feet (12') in width and do not lead to an accessible route. Provide new spaces complying with the FAC and ADAAG including level access aisles leading to an accessible route in accordance with the diagram below.

**EXHIBIT**

tabbies

B2




**Fig 9(a)**
**Standard Parking Space Design**
Fig 9(a) Standard Parking Space Design: The access aisle shall be a minimum c 60 in (1525 mm) wide. The accessible route connected to the access aisle shall a minimum of 44 in (1118 mm) wide.




**Fig 9(a)**
**Standard Parking Space Design**
Fig 9(a) Standard Parking Space Design: The access aisle shall be a minimum c 60 in (1525 mm) wide. The accessible route connected to the access aisle shall a minimum of 44 in (1118 mm) wide.

The access aisles must directly link with an accessible route to the facility in accordance with Section 4.3.2 of the ADAAG. Spaces must link each of the stores within the site in addition to the performance of the following modifications:

## ENTRANCE ACCESS and PATH OF TRAVEL

There are no accessible routes from the street, sidewalk and parking areas. There are existing violations of the requirements in sections 4.3.2, 4.7.1 and 4.8.2 of the ADAAG in all of the inspected areas as indicated in this final report.

### 4.3.2 Location.

(1)     At least one accessible route within the boundary of the site shall be provided from *public transportation stops*, accessible parking, and accessible passenger loading zones, and *public streets or sidewalks* to the accessible Building entrance, they serve. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public.

(2)     At least one accessible route *shall connect accessible buildings, facilities, elements, and spaces* that are on the same site.





The areas of the facilities that are connected to the parking areas must connect by ramps with slopes not greater than 1:12 and provide a smooth transition along the accessible route.



**Adjoining slope shall not exceed 1:20**

X

Y

slope = Y:X
where X is a level plane

walk

street

## ACCESS TO GOODS AND SERVICES

The inspection of store interiors within the complex revealed the following violations of the ADA Barrier Removal Checklist for Existing Facilities. Provide detectable warnings for any protruding objects with paths of travel require thirty-six inches (36") clear width in aisles and thirty inches by forty-eight inches floor space (30" x 48") at shelves/counters. There is currently no clear floor space or path of travel to the lottery station in the supermarket and throughout the liquor store. The entrance to the liquor store has a clear width of twenty seven-inches (27") at the doorway in violation of ADAAG minimums of thirty-two inches (32").



The existing service counters are above the maximum height and self service areas are outside the maximum reach ranges.



There is not a clear path of travel from the gas pumps and supermarket or bar areas.

  

The existing gas pumps are inaccessible and no policies for the allowance of service animals or assistance to accommodate the needs of disabled patrons exist at the facility.

  

## Restrooms

The stores at the facility must provide accessible restrooms for use by the disabled that are not equipped with a type A stall as shown in figure 30 of the ADAAG where stalls are partitioned.

 





The existing restrooms do not provide proper door opening clearances, handles, grab bars, lavatories, urinals, dispensers or signage. Signs must mount 60" to the centerline of the sign on the latch side of the door.



The remaining fixtures should be made accessible in accordance with the diagrams below to meet the requirements of the ADA and FAC.



This ADA Inspection Report addresses the Americans with Disabilities Act Checklist for Readily Achievable Barrier Removal. As always, we appreciate your business and look forward to working with you again in the near future. If you have any questions in this matter, contact our main office at (239) HELP-ADA.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando Division

ACCESS FOR AMERICA, INC.,
and DOUG WILDER,

      Plaintiffs,

vs.

STEVEN J. WOLK, Individually;
STEVEN WOLK as Trustee under the
Steven Wolk Living Trust dated the
18th day of July, 1996; and HELEN J. WOLK,
as Trustee under the Helen J. Wolk Living
Trust dated the 18th day of July, 1996,

      Defendants/Third-Party Plaintiffs,

vs.

CONOCOPHILLIPS COMPANY,

      Third-Party Defendants.

_____/

CASE NO.: 6:02-CV-1204-ORL-19JGG

## <u>AFFIDAVIT OF DOUG WILDER IN SUPPORT OF<br>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

STATE OF FLORIDA     )
                  )
COUNTY OF CHARLOTTE )

      BEFORE ME, the undersigned, personally appeared, DOUG WILDER, who after being

duly sworn, deposes and states as follows:

    1.     That I am DOUG WILDER, a named Plaintiff in this action, and as such, have first
hand and personal knowledge of the facts and circumstances involved herein;

    2.     That I am a resident of the State of Florida, and reside at 530 Cortoandra, Punta
Gorda, Florida 33950;



EXHIBIT

C

2.    That I am a disabled person according to the Americans with Disabilities Act of 1990
      on account I have muscular dystrophy, and am unable to ambulate without a
      wheelchair;

3.    That I have visited the Defendant's property and subject of this lawsuit, a shopping
      center which is located at 6905 Municipal Drive in Orlando, Florida, and I intend to
      return to the shopping center as an invitee; and,

4.    That during my visit to the shopping center, I was denied access to the goods and
      services offered to the public at the establishment due to the architectural designs of
      the facility.

FURTHER AFFIANT SAYETH NAUGHT.


_____
Doug Wilder

STATE OF FLORIDA          )
                          S.S.
COUNTY OF CHARLOTTE )

        Before me, the undersigned authority, appeared Doug Wilder (who is known
to me) or who produced _____ as identification, as the person who executed the
foregoing and who did/not take an oath on this  3  day of September, 2003.
                                                          December

_____
NOTARY PUBLIC
STATE OF FLORIDA AT LARGE

My Commission Expires:

OFFICIAL NOTARY SEAL
JACQUELINE L MOORE
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. DD102482
MY COMMISSION EXP. MAR. 24,2006

File#3335AFFIDAVIT Doug Wilder.wpd

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando Division

ACCESS FOR AMERICA, INC.,
and DOUG WILDER,

        Plaintiffs,

vs.

STEVEN J. WOLK, Individually; and
STEVEN WOLK as Trustee under the Steven
Wolk Living Trust dated the 18th day of July,
1996; and HELEN J. WOLK, as Trustee under
the Helen J. Wolk Living Trust dated the
18th day of July, 1996,

        Defendants/Third-Party Plaintiffs,

vs.

CONOCOPHILLIPS COMPANY,

        Third-Party Defendants.

_____ /

CASE NO.: 6:02-CV-1204-ORL-19JGG

## AFFIDAVIT OF MARTIN SMITH IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA      )
                            )
COUNTY OF CHARLOTTE)

        BEFORE ME, the undersigned, personally appeared, MARTIN SMITH, who after being

duly sworn, deposes and states as follows:

    1.      That I am MARTIN SMITH, the president of ACCESS FOR AMERICA, INC.;

    2.      That ACCESS FOR AMERICA, INC. is a not-for-profit organization incorporated
            under the laws of the State of Florida with the purpose of providing support to its
            members as well as representing the members' interest by assuring that places of



EXHIBIT
D

public accommodation are accessible to and usable by the disabled;

3.  That ACCESS FOR AMERICA, INC. consists of individual members with disabilities as defined by the Americans with Disabilities Act of 1990, including, quadriplegia, profound deafness, paraplegia, blindness, and other crippling neurological and muscular disorders; and,

4.  That one or more members of ACCESS FOR AMERICA, INC. have visited the shopping center located at 6905 Municipal Drive in Orlando, Florida, and were denied access to the goods and services provided to the public at the establishment on account of barriers to access that exist at the property.

5.  One or more members of ACCESS FOR AMERICA, INC. intend to return to the property but are barred from access based on the current designs of the facility.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Martin Smith

STATE OF FLORIDA          )
                                            S.S.
COUNTY OF CHARLOTTE)

    Before me, the undersigned authority, appeared _Martin Smith_ (who is known to me, or who produced _FL ID CARD_ as identification, as the person who executed the foregoing and who did/not take an oath on this _15th_ day of ~~September,~~ 2003. _October_

_____
NOTARY PUBLIC
STATE OF FLORIDA AT LARGE

My Commission Expires:

OFFICIAL NOTARY SEAL
SARAH E VOSBURGH
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC 957363
MY COMMISSION EXP. JULY 27,2004

W:\WPDocs\A.D.A\#3300 through #3399 - OPEN ADA FILES\#3335-WOLK, STEPHEN TRUSTEE\AFFIDAVIT.Access for America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 01-14063-CIV-MIDLEBROOKS

ACCESS 4 ALL, INC., a Florida
not-for-profit corporation, and
LYLE WALENDY, individually,

FILED by ⎽WGL⎽ D.C.

OCT 1 9 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

        Plaintiffs,

v.

REPUBLIC DEVELOPMENT OF
CONNECTICUT, INC.,

        Defendant.
_____/

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

        THIS CAUSE comes before the Court on Plaintiffs' Motion for Partial Summary Judgment
on Defendant's Eleventh Defense, filed September 19, 2001 (DE#19).  On October 3, 2001, the
defendant Republic Development of Connecticut ("Republic") filed its response, and the motion is
accordingly ripe for review.  The Court has reviewed the record and is fully advised in the premises.

        Plaintiffs Access 4 All, Inc. and Lyle Walendy (collectively, "plaintiffs") filed this action
against Republic for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181
*et seq.* ("ADA").  The complaint claims that, as a place of public accommodation, Republic's
property must comply with the provisions of the ADA and that Republic has violated the ADA by
failing to remove numerous barriers to access on the property.  Republic filed its answer and
affirmative defenses, and the parties have also recently submitted their joint scheduling report.  This
report contains a list of stipulated or uncontested facts, one of which is that Republic is the owner
of the property which is the subject of this suit and leases space therein to others.  In its answer and
affirmative defenses, Republic lists as its eleventh affirmative defense that

> Defendant is not responsible for, nor has authority over the interiors of the subject
> properties which are leased to other third parties, not parties to this litigation, and
> therefore cannot be compelled to perform the actions sought by Plaintiffs in its [*sic*]
> Complaint, should Plaintiffs be successful in this action.

EXHIBIT

E

It is this affirmative defense upon which the plaintiffs move for partial summary judgment.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Summary judgment may be entered only where there is *no* genuine issue of material fact. The moving party bears the burden of meeting this standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A party may move for partial summary judgment in order to eliminate an affirmative defense. *See, e.g., United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1284, 1244, 1244 (E.D. Cal. 1997); *Al-Site Corp. v. VSI Int'l, Inc.*, 902 F. Supp. 1551 (S.D. Fla. 1995).

Republic's eleventh affirmative defense is basically that it, as the owner of the property in question, cannot be held liable for the noncompliance of its tenants. However, the law states otherwise. Pursuant to the ADA, "[b]oth the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are ... subject to the requirements of" the ADA. 28 C.F.R. § 36.201(b). That section further states that "[a]s between the parties, allocation for responsibility for complying with the obligations of [the ADA] may be determined by lease or other contract." *Id.* However, this is not tantamount to allowing a party to escape liability for noncompliance with the ADA by way of lease or contract., as will be explained shortly. Here, in Republic's fourth affirmative defense, Republic "acknowledges that it owns the building and property which is the subject of this action ans that said property is leased to third parties." Further, in the Summary of Stipulated or Uncontested Fact section of the joint scheduling report, the parties state that "[t]he provisions of the [ADA] and certain of the Federal regulations enacting the [ADA] apply in this action." Therefore, the undisputed facts include that Republic is the owner and lessor of property which is subject to the requirements of the ADA.

Although the ADA allows parties to allocate the responsibilities of complying with the ADA as between *themselves*, this is not the case vis-à-vis third parties, such as people wishing to avail themselves of the public accommodations. Indeed, this is precisely how the Department of Justice

has interpreted section 36.2019(b) of the ADA's implementing regulations.[1] Although the landlord and tenant may shift the burden as between themselves, the landlord may *not* contract away its responsibilities under the ADA. Therefore, contrary to Republic's eleventh affirmative defense, it can in fact be held liable for its tenants' noncompliance with the ADA.[2] *See Botosan v. Fitzhugh*, 13 F. Supp.2d 1047, 1053-55 (S.D. Cal. 1998) (holding that landlord can be liable for ADA violations even though contract gave tenant the responsibility for compliance).

Therefore, because there are no genuine issues of material fact relevant to this analysis, and the plaintiffs are entitled to judgment as a matter of law on Republic's eleventh affirmative defense, it is hereby

ORDERED AND ADJUDGED that plaintiffs' Motion for Partial Summary Judgment on Defendant's Eleventh Defense is GRANTED.

DONE AND ORDERED in Chambers in West Palm Beach, Florida, this *19* day of October 2001.

---

[1] The Department of Justice has given the following example of its interpretation of this section.

> ... ABC Company leases space in a shopping center it owns to XYZ Boutique. In their lease, the parties have allocated to XYZ Boutique the responsibility for complying with the barrier removal requirements of [the ADA] within that store. In this situation, if XYZ Boutique fails to remove barriers, both ABC Company (the landlord) and XYZ Boutique (the tenant) would be liable for violating the ADA and could be sued by an XYZ customer. Of course, in the lease, ABC could require XYZ to indemnify it against all losses caused by XYZ's failure to comply with its obligations under the lease, but again, such matters would be between the parties and would not affect their liability under the ADA.

Office on the ADA, United States Department of Justice, *The Americans with Disabilities Act Title III Technical Assistance Manual* 3 (1992). This appears to be the exact situation in the case at bar.

[2] In its brief response, Republic asserts that there is a genuine issue of material fact, precluding summary judgment. Republic appears to be claiming that because the Court has before it no evidence of any contract between itself and the relevant tenants, the Court cannot rule on the relationship between them. However, this has the law backwards. The law is such that no matter *what* such a contract may contain, the landlord may still be held liable for a violation of the ADA, although the landlord may seek indemnity from the tenant, or perhaps bring the tenant into the action as a third-party defendant. Therefore, the fact that the Court does not have before it any such contract is immaterial to the present discussion.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

copies to counsel of record